Gerard **SCHAEFER**, Plaintiff,

v.

Michael **NEWTON** and Avon Books, Defendants.

No. IP 93–614–C.

United States District Court, S.D. Indiana, Indianapolis Division.

July 11, 1994.

---

Gerard Schaefer, pro se.

Jan M. Carroll, Barnes & Thornburg, Indianapolis, IN, for defendants.

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT AND ANCILLARY MOTIONS AND DIRECTING ENTRY OF JUDGMENT

STECKLER, District Judge.

This cause is before the Court on the plaintiff's complaint and on the defendants' answer. Both the plaintiff and defendants seek the entry of summary judgment and those motions have been fully briefed. The defendants have also filed a motion to strike the evidentiary materials relied on by the plaintiff in opposing the motion for summary judgment. The motion to strike is also fully briefed. The plaintiff has also filed various other motions.

Whereupon the Court, having read and examined the motions for summary judgment, the ancillary motions and the responses to all such motions, and being duly advised, now makes its rulings.

For the purpose of organizing these rulings the Court will first summarize the complaint, identify the parties and the basis for jurisdiction over the claim, analyze the ancillary motions and then discuss the dispositive motions.

## I. Introduction

### A. Background

Gerard Schaefer is an inmate in a Florida prison serving two (2) concurrent life sentences for the murders of Susan Carole Place and Georgia Jessup. Defendant Michael Newton is the author of a book entitled **Hunting Humans: The Encyclopedia of Serial Killers** ("the book"). Defendant Avon Books is a division of The Hearst Corporation and published Newton's book in softcover.

Plaintiff Schaefer seeks compensation for the defamation he claims to have suffered through the defendants' actions in writing and publishing the book. He was mentioned in this book in an unflattering way. The action, therefore, is for defamation. Jurisdiction is invoked pursuant to the diversity statute, 28 U.S.C. § 1332(a)(1), with Schaefer being a citizen of Florida, Newton a citizen of Indiana and Avon Books a citizen of a state other than Florida. Schaefer seeks an injunction barring further publication and distribution of the book and five million dollars in compensatory and punitive damages from each defendant.

### B. Procedural Posture and Pending Motions

Plaintiff Schaefer was granted leave to proceed *in forma pauperis* in this action. He is proceeding without counsel but has consistently displayed vigor and adeptness in pressing his claims in this action. The defendants have appeared by counsel and have answered the complaint.

The motions which now pend, and which are fully at issue, and the date on which each was filed are the following:

| | |
|---|---|
| Plaintiff's Motion for Summary Judgment | April 6, 1994 |
| Defendants' Cross Motion for Summary Judgment | April 19, 1994 |
| Defendants' Motion to Strike or Disregard | June 15, 1994 |
| Plaintiff's "Objection to Use of Materials" | June 24, 1994 |
| Plaintiff's Objection to Raising Issues | June 24, 1994 |

The latter three (3) of these motions are ancillary to the cross motions for summary judgment and must be ruled on before the dispositive motions can be decided.

## II. The Ancillary Motions

### A. Plaintiff's Objections to Use of Materials and to Raising Issues

The plaintiff filed two "objections" on June 24, 1994. The content of these objections is, to some extent, related. The Court will address the specifications within these objections rather than treat each document separately.

One point on which Schaefer denounces the defendants' arguments is that the defendants continue to describe this action as "frivolous." This warrants only the observation that the defendants have used the term in argument *as* argument. They are permitted to characterize the plaintiff's claims in this fashion and their doing so is not construed by the Court as a reference to an action which is frivolous within the meaning of 28 U.S.C. § 1915(d), for that question has already been answered.

The second element of the Shaefer's objections is his reply to the defendants' argument that he did not file a statement of genuine issues of facts—the reply being that since he is proceeding *pro se* he should not be held to a standard "for which he is not trained or familiar with [sic]." The problem with this reply is that Local Rule 56.1 does exist, that it serves an important purpose and, most important here, that Schaefer was notified by the defendants' attorney in plain English of the existence and requirements of Local Rule 56.1. There is little doubt of the plaintiff's knowledge of court proceedings in general, of the manner in which to oppose motions and requests of his adversaries and of comprehending through plain English a rule which imposes only a modest burden in this case.[1]

Yet another theme of the objections is that the defendants are not entitled to prevail in this action. Schaefer asserts that there is no truth in what the defendants have written or published insofar as there is a link between himself and 20 murdered persons. This will be treated as further argument relative to the dispositive motions.

The main thrust of the objections, however, is to attack the defendants' use of materials which Schaefer claims (1) were ordered sealed by a Florida state court and (2) are used out of context. The materials are asserted to be used in the defendants' reply to Schaefer's response to the cross motion for summary judgment. The Court does not readily discern precisely what documents this objection refers to for the simple reason that the defendants' reply did not include any new documents and the documents of a nonpublic nature which are attached to the objection were *not* submitted with the defendants' materials opposing Schaefer's motion for summary judgment.

■ The Court surmises that Schaefer's own letter identified as Exhibit 25 to the "second verified declaration of Michael D. Newton" is the document (a letter written to Schaefer from Sondra London) to which the objections filed June 24, 1994 refer. Even if this is correct, however, the other document Schaefer attaches in one of those objections, a copy of the Circuit Court for the Eighth Judicial Circuit in Florida in No. 92–2036–CA, merely ordered a brief sealed *in that case.* That order does not describe the brief or the rationale warranting this action. More important here are the facts that the order (1) does not identify *whose* brief was sealed, (2) shows that of the parties to this action only Schaefer himself was a party to No. 92–2036–CA and (3) neither purported to nor could limit the transmission or use of information in the public arena. If Newton acquired this information in violation of a court order Schaefer may have a remedy in that forum for the vindication of that order against party(ies) bound by that order. This is not that forum and hence Schaefer can lodge no effective objection to the defendants' reliance on information obtained from Sondra London.

Thus, Schaefer's objections filed June 24, 1994 are denied to the extent that they can be construed to seek specific relief other than an outcome favorable to him.

### B. Defendants' Motion to Strike or Disregard

*The Motion.* Schaefer has supported his own motion for summary judgment and opposed the defendants' cross motion for summary judgment with myriad evidentiary materials. The parties are in disagreement concerning whether much of these are proper.

*Applicable Law.* "Supporting materials designed to establish issues of fact in a summary judgment proceeding 'must be established through one of the vehicles designed to ensure reliability and veracity—depositions, answers to interrogatories, admissions and affidavits. When a party seeks to offer evidence through other exhibits, they must be identified by affidavit or otherwise made admissible in evidence.'" *Friedel v. City of*

---

1. The case is not complex. Schaefer has pursued the case with vigor. He is acquainted with the legal theory under which he is proceeding and with his view of the pertinent facts. This view necessarily encompasses putative facts from the defendants which he feels are other than as presented or not genuine. These circumstances are ample to demonstrate that compliance with Local Rule 56.1 should be required and could have been satisfied. Nonetheless, the Court will not resolve the pending motions on this basis.

250

*Madison,* 832 F.2d 965, 970 (7th Cir.1987), quoting *Martz v. Union Labor Life Ins. Co.,* 757 F.2d 135, 139 (7th Cir.1985). Affidavits must be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. *Fed.R.Civ.P.* 56(e). This rule "demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted." *Hadley v. County of Du-Page,* 715 F.2d 1238, 1243 (7th Cir.1983).

■ Inadmissible hearsay contained in affidavits may not be considered. *Pfeil v. Rogers,* 757 F.2d 850, 862 (7th Cir.1985), *cert. denied,* 475 U.S. 1107, 106 S.Ct. 1513, 89 L.Ed.2d 912 (1986). Conclusory statements or indications of opinion or belief offered without any factual support are also insufficient to create a genuine issue of fact. *Palucki v. Sears, Roebuck, & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989).

■ *Analysis.* Schaefer has submitted his own verified declaration, to which many documents are attached. He has also submitted myriad other documents which ostensibly bear on his claim in this case (although many simply relate to problems he has had pursuing a literary career while in prison). The defendants list the exhibits and there is no purpose in repeating that list since they all suffer from the same defect.

The many documents Schaefer has submitted are unauthenticated and subject to being stricken on that basis. Even after the motion to strike was filed Schaefer sought to defend his submission of deficient materials

rather than rehabilitate them through a process of identification.

The plaintiff's opposition to striking the foregoing misses the mark. The fact that *he believes* portions or all of the information intended to be conveyed in these materials is not the standard by which we must assess those materials under Rule 56(e). Nor is there a less formidable test for accepting the materials of *pro se* litigants as a basis for creating a genuine issue of fact.[2] In sum, the defendants' motion to strike is **granted.** Further, although the defendants have not challenged any portion of Schaefer's verified declaration itself, the contents of that document must be disregarded to the extent they amount to nothing but Schaefer's legal conclusions.

### III. The Cross Motions for Summary Judgment

After various skirmishing on preliminary issues regarding the sufficiency of Schaefer's complaint and discovery, the case is now focused on the hurdle of summary judgment, which each party has wielded against the other. The plaintiff, it is true, is somewhat bereft of evidence after the necessary ruling in Part II C of this Order, but that is simply the state of things.

### A. Applicable Law

Summary judgment is proper in a case only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c).

■ In ruling on a summary judgment motion the court accepts as true the nonmov-

---

2. The insidiousness of a double standard is obvious and obviously the drafters of the Federal Rules steered well clear of this danger. While a district court, in considering the allegations in a *pro se* litigant's complaint, must overlook the fact that the allegations are unartfully pleaded, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), this does not mean that the Court, in considering materials filed in opposition to a motion for summary judgment, should overlook the requirement of Federal Rule of Civil Procedure 56(e) that affida-

vits be made on personal knowledge and set forth facts as would be admissible in evidence. The "liberal construction" afforded the pleadings of pro se litigants cannot be used as a mechanism for avoiding federal rules of evidence and civil procedure. *See also Averhart v. Arrendondo,* 773 F.2d 919 (7th Cir.1985) (the generous treatment accorded *pro se* litigants does not exempt them from both the substantive and procedural rules of law and does not authorize a separate set of rules for them).

ing party's evidence, draws all legitimate inferences in favor of the nonmoving party and does not weigh the evidence or the credibility of witnesses. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–251, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). However, merely alleging a factual dispute cannot defeat the summary judgment motion. *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir. 1989). "The court should neither 'look the other way' to ignore genuine issues of material fact, nor 'strain to find' material fact issues where there are none...." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1363–64 (7th Cir.1988) (quoting *Beard v. Whitley County, REMC*, 840 F.2d 405, 409–10 (7th Cir.1988)). The complaint, of course, only frames the issue by which the existence of a question of material fact is to be determined; it does not constitute evidence that a court may consider in determining whether summary judgment is proper. *Hughes v. Joliet Correctional Center*, 931 F.2d 425, 428 (7th Cir.1991).

### B. Findings of Fact

On the basis of the pleadings and the expanded record, and specifically on the portions of that record which comply with the requirements of Rule 56(e), the Court makes the following findings of fact:

1. Plaintiff Gerard Schaefer is confined at the Florida State Prison serving concurrent life sentences imposed by the Circuit Court for the Nineteenth Judicial Circuit of Florida on October 4, 1973 in *State of Florida v. Gerard J. Schaefer, Jr.*, No. 73–103–CF–A–01.

2. Defendant Michael Newton resides in Indiana and is the author of a book entitled **Hunting Humans: The Encyclopedia of Serial Killers** ("the book"). Defendant Avon Books is a division of The Hearst Corporation and published Newton's book in softcover.

3. **Hunting Humans** was published in hardback in 1990; Avon Books published the paperback edition in April 1992. As the full name suggests, the book is a work about serial murders. The entire Schaefer entry in **Hunting Humans** consists of the following paragraph:

A homicidal ex-policeman from Oakland Park, Florida, dubbed the "Sex Beast" by local newsmen, Schaefer was theoretically linked with the murders of at least 20 persons after the jewelry, teeth, and clothing of several victims were recovered from a trunk in the attic of his mother's home. The public defender's office was unable to prevent Schaefer's conviction and imprisonment on first-degree murder charges, but the killer took it in stride. When Schaefer's wife divorced him and became engaged to his defense attorney, he gave the couple his blessing, requesting that the same lawyer continue to handle his case through forthcoming appeals.

**Hunting Humans** at 298.

4. In researching the entry regarding Schaefer, Newton examined a variety of materials from essentially four (4) different kinds of sources: (1) law enforcement and court records; (2) press and other media articles; (3) published materials in which Schaefer was annotated as a serial killer or otherwise associated with the serial killer phenomenon; and (4) Schaefer himself.

5. The materials examined by Newton are replete with information linking Schaefer with the murders of at least 20 persons. In fact, from his own hand he explains that he has been linked to scores of murders (80–110), that he is "probably at least one of the top [serial killer's] of this Century," that his killings "would only come to perhaps 10 to 12 per year for 8 years" and that he murdered women out of a sense of moral outrage rather than sexual interest. (These swaggering remarks are in exhibit 25 to Newton's second verified declaration, filed on April 19, 1994 and are echoed in exhibit 24, which is Schaefer's suggestions for a lurid description of himself.)

6. Although Schaefer disputes his culpability for the two murders of which he stands convicted he has not succeeded in having those convictions set aside. Although he similarly disputes his *guilt* of serial murders he is undeniably *linked* with them. Neither Newton nor Avon Books had any knowledge that any fact in the Schaefer entry was false

and had no reason to believe that any fact in the entry may have been false.

7. Any conclusion of law stated below, to the extent that it constitutes a finding of fact, is herein incorporated by reference as an additional finding of fact by the Court.

### C. Conclusions of Law

Based on the foregoing Findings of Fact, the Court now makes the following Conclusions of Law:

1. There is diversity of citizenship between the parties and the amount in controversy is asserted to exceed $50,000.00. The defendants have not asserted that diversity jurisdiction is absent by reason of the amount (actually) in controversy and thus this Court has jurisdiction over Schaefer's claim pursuant to 28 U.S.C. § 1332(a).

2. Schaefer's action is based on a theory of defamation, a common law tort in both Indiana and Florida. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), requires this Court to look to Indiana's choice-of-law rules.

3. The elements of defamation in Indiana are: (1) communication with defamatory imputation; (2) malice; (3) publication and (4) damages. *Associates Corporation of North America v. Smithley,* 621 N.E.2d 1116 (1993). These correspond to the elements of a similar action in Florida. *Shaw v. R.J. Reynolds Tobacco Co.,* 818 F.Supp. 1539, 1541 (M.D.Fla.1993) ("The elements that a Plaintiff must prove in a defamation case are that the Defendant published a false statement, that the statement was communicated to a third party, and that the Plaintiff suffered damages as a result of the publication.").

4. Based on *Aafco Heating & Air Conditioning Co. v. Northwest Publications, Inc.,* 162 Ind.App. 671, 321 N.E.2d 580 (1974), *cert. denied,* 424 U.S. 913, 96 S.Ct. 1112, 47 L.Ed.2d 318 (1976), Indiana requires a showing of "actual malice" as that term has evolved from *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), in order to support a defamation action by even private figures if the statements in question relate to an issue of public

concern. While this is a minority position, it is solidly entrenched as Indiana law. *Chang v. Michiana Telecasting Corp.,* 900 F.2d 1085, 1088 (7th Cir.1990).

5. Florida also requires such a showing when the subject of an article is a public figure. *Della–Donna v. Gore Newspaper,* 489 So.2d 72 (Fla.App.), *rev. denied,* 494 So.2d 1150 (Fla.1986). There is no doubt, given the nature of Schaefer's crimes and his continuing literary activities and controversy on the subject of serial murders, that the subject of serial murder in general and discussion of specific crimes in particular touches issues of public concern and Schaefer is a public figure as to those subjects. Accordingly, "actual malice" is the standard to be applied in this case. *Id. See also Fridovich v. Fridovich,* 573 So.2d 65 (Fla.App. 1990); *Southern Air Transport v. Post–Newsweek Stations,* 568 So.2d 927 (Fla.App. 1990).

6. It follows from this that the defamation law of Indiana may be applied because, Schaefer being a public figure on the subject of serial murder, there is no substantive difference between its law and that of Florida. *International Administrators v. Life Ins. Co.,* 753 F.2d 1373, 1376 n. 4 (7th Cir.1985) (where there is no disagreement among the contact states, the law of the forum state applies); *Loos v. Farmers Tractor & Implement Co.,* 738 F.Supp. 323, 325 (S.D.Ind.1990) (same).

7. "Actual malice" in this context has nothing in common with "ill will." *Underwager v. Salter,* 22 F.3d 730 (7th Cir.1994). *See also Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991) ("actual malice" in a defamation case and malice as "an evil intent or a motive arising from spite or ill will" are separate and unrelated concepts). It means, instead, "knowledge that the statement was false, or doubts about its truth coupled with reckless disregard of whether it was false." *Underwager,* 22 F.3d at 733, (citing cases).

8. Applying this standard, the question on summary judgment here is "whether the evidence presented is such that a reasonable

jury might find that actual malice had been shown with convincing clarity." *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2515. Tailored to Schaefer's own motion for summary judgment, of course, the question is whether a reasonable jury might *not* find that malice has been shown with convincing clarity. *Jean v. Dugan*, 20 F.3d 255, 763 (7th Cir. 1994). In a motion for summary judgment concerning defamation, "if the court concludes that no reasonable jury could find actual malice with convincing clarity, the defendant is entitled to judgment as a matter of law." *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480 (7th Cir.1986).

9. Based on an independent review of the record, drawing all reasonable inferences in favor of Schaefer, *Brookins v. Kolb*, 990 F.2d 308, 312 (7th Cir.1993), the Court concludes that the evidence presented "is of insufficient caliber or quantity to allow a rational finder of fact to find actual malice by clear and convincing evidence." *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513. It is clear from the record that the entry on Schaefer in Hunting Humans was neither fabricated nor "so inherently improbable that only a reckless man would have put them in circulation." *St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968) (clarifying the meaning of "reckless disregard" of a statement's probable falsity to be not whether a reasonably prudent person would have published or would have investigated before publishing but circumstances showing that the defendant in fact entertained serious doubts as to the truth of the statement and published in spite of his doubts). Indeed, that entry cites fewer numbers and virtually no details of any of the scores of murders or disappearances which Schaefer himself has stated in various ways that *he* is the number one authority on serial killers in the United States. Even the items submitted as exhibits to the plaintiff's "documents demonstrating actual malice," filed April 28, 1994, do not come close to the burden Schaefer bears in this action. Those letters, which seem to be from Newton, demonstrate only how very meticulous Newton was in assessing and seeking to compile accurate information on subjects for his books.

10. This brings us to an interesting praecipe—to the brink of truth. The defendants have documented, without contradiction from Schaefer, that the words of the entry on him from **Hunting Humans** are true.[3] The truth, as it has been said, is a defense and this case should be no exception. It is not the defendants' burden in this case to "prove" Gerard Schaefer to be a serial killer. Schaefer's resilient theme that he is *not* a serial killer and has never been proven to be such is therefore irrelevant.

11. The truth in this case may or may not be that Schaefer is responsible for the deaths of scores of his fellow humans. The depravity which inheres in such conduct is self-evident. What is also evident is that Schaefer is a self-proclaimed serial killer genius and that he is a convicted double-murderer. This latter fact makes him a serial killer as that term is defined by Newton and others. Schaefer can quarrel with this definition, but only by arguing that it should be changed. The record establishes beyond doubt that Schaefer has indeed been linked with the murders of at least 20 persons. The recovery of items referred to in the first sentence of the entry on Schaefer is a matter of public record. *Schaefer v. Stack*, 641 F.2d 227 (5th Cir.1981). He boasts of the private and public associations he has had based on the reports that he is a serial killer of world-class proportions and it is only arrogant perversity which propels him toward this and similarly meritless lawsuits in which he claims otherwise. *E.g.*, *Schaefer v. Nash*, 149 F.R.D. 583 (N.D.Ill.1993).

## IV. Conclusion

Schaefer's own motion for summary judgment failed to show that he is entitled to judgment as a matter of law since, among other things, it did not demonstrate that the defendants wrote or published the entry on him in **Hunting Humans** with actual malice.

---

3. The last sentence of the entry has not been problematic, is not alleged to be defamatory and is included in a previous portion of this Order solely to place the entire entry in context. Therefore, the finding that the entry is "true" is valid as to the last sentence because Schaefer has not challenged it as untrue.

Furthermore, since he has not come forward with an issue for trial as to the presence of actual malice or even that the irksome statements about him was untrue, the defendants' motion must be **granted.** A final judgment consistent with this Order shall now issue. The defendants are entitled to their costs in this action and the filing fee of $120.00 prescribed by 28 U.S.C. § 1914(a) is assessed against the plaintiff. *See McGill v. Faulkner,* 18 F.3d 456 (7th Cir.1994).

**ALL OF WHICH IS ORDERED** this 11th day of July 1994.